IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Stella Samons, et al.,

    Plaintiffs,

    v.                          Case No. 2:08-cv-988

Cardington Yutaka
Technologies, Inc.,

    Defendant.

OPINION AND ORDER

    This is an employment discrimination action filed by plaintiffs Stella Samons and Mark Samons, her husband, against Cardington Yutaka Technologies, Inc., a corporation located in Cardington, Ohio. Ms. Samons was formerly employed by the defendant as Senior Manager of Administration, responsible for human resources, general affairs, environmental health and safety, and management information systems. Complaint, ¶ 5. According to the complaint, in January of 2006, Ms. Samons was involved in an investigation of an alleged affair between Jim Willoby, an executive, and another employee of the company. If proved, such an affair would constitute a violation of the defendant's ethics policy, or could potentially constitute sexual harassment. The female employee involved in the alleged affair resigned. Complaint, ¶ 6. There are no facts in the complaint indicating that the investigation revealed any sexual harassment on the part of the executive.

    It is further alleged that following this investigation, two senior officials at the company began a "campaign of harassment" against Ms. Samons as a result of her exposure of the executive's

affair. Complaint, ¶ 7. Although these individuals are not identified in paragraph seven, the court assumes Ms. Samons is referring to Executive Vice President Fred Razavi and Mr. Willoby, who are mentioned later in the complaint. Ms. Samons alleges that this harassment included telling her she was not permitted to respond to the company president's questions regarding what would be good policy for the company, and preventing her from working on setting up a new plant in Alabama. Complaint, ¶¶ 7, 12. Ms. Samons alleges that Mr. Willoby directed verbally hostile attacks towards her criticizing the Alabama project even though she was not involved in that project. Complaint, ¶ 15. Ms. Samons further alleges that Ms. Lancaster, a female human resources assistant manager, began to mock plaintiff's efforts at obtaining cooperation in the department. Complaint, ¶ 13.

It is further alleged that as part of her duties, Ms. Samons was requested to provide a report on the company's compliance with various laws. In February, 2006, she notified Mr. Razavi that the company was violating the Fair Labor Standards Act wage and hour provisions and Internal Revenue Service tax regulations. Complaint, ¶ 9. Ms. Samons further alleges that between December, 2006, and February, 2007, she opposed the weight-lifting requirements for pre-placement physicals until she was sure there would not be disparate impact on women applicants, and e-mailed the safety coordinator a copy of a case regarding the issue. Complaint, ¶ 16. It is further alleged that in March, 2007, Mr. Razavi opposed hiring a female over forty years of age, and that he removed Ms. Samons from the final interviewing process and terminated her ability to make hiring decisions. Complaint, ¶ 17. Ms. Samons also contends that between February and May, 2007, she

opposed Mr. Razavi's discriminatory conduct directed against hiring other females over the age of forty or applicants he viewed as disabled. Complaint, ¶ 19.

It is further alleged that in February, 2006, and June, 2006, Carl Wolf, a human resources manager, was caught viewing pornography on the internet, and was disciplined with a written warning on the first occasion, and with an in-house suspension on the second occasion. Complaint, ¶¶ 8, 11. Mr. Wolf was also suspended for three days when he discussed the details of a sexual harassment investigation he was conducting with associates, although Ms. Samons recommended that he should have been fired. Complaint, ¶ 18.

The complaint states that on May 11, 2007, Ms. Samons was discharged from her employment. It is further alleged that a male employee who disagreed with Mr. Razavi concerning the failure to hire an individual who was perceived as being disabled was not fired. Complaint, ¶ 20.

In Count One of the complaint, Ms. Samons asserts a claim of gender discrimination and hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq. Count Two is a claim under the Equal Pay Act, 29 U.S.C. §206(d)(1). In Count Three, Ms. Samons asserts a claim for retaliation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §215(a)(3). In Count Four, Ms. Samons asserts a claim of retaliation under Title VII, 42 U.S.C. §2000e-3(a), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §623(d), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203(a). In Count Five, Ms. Samons asserts a claim of gender discrimination and retaliation under Ohio Rev. Code Chapter 4112. Count Six

3

asserts a claim under Ohio law for wrongful discharge in violation of public policy. Count Seven is a claim for loss of consortium brought by Mark Samons.

This matter is now before the court on the defendant's partial motion to dismiss Counts One, Three, Four, and Six of the complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim for which relief may be granted. Plaintiffs concede that Count Six fails to state a claim in light of Leininger v. Pioneer National Latex, 115 Ohio St.3d 311, 875 N.E.2d 36 (2007), in which the Ohio Supreme Court held that a common-law tort claim for wrongful discharge does not exist where the remedies available through a statutory claim of age discrimination provided complete relief. The court will proceed to address the parties' arguments concerning Counts One, Three and Four.

I. Motion to Dismiss Standards

In ruling on a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff, accept all well-pleaded allegations in the complaint as true, and determine whether plaintiff undoubtedly can prove no set of facts in support of those allegations that would entitle him to relief. Bishop v. Lucent Technologies, Inc., 520 F.3d 516, 519 (6th Cir. 2008); Harbin-Bey v. Rutter, 420 F.3d 571, 575 (6th Cir. 2005). To survive a motion to dismiss, the "complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. Id.

While the complaint need not contain detailed factual

4

allegations, the "[f]actual allegations must be enough to raise the claimed right to relief above the speculative level" and must create a reasonable expectation that discovery will reveal evidence to support the claim. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007); Campbell v. PMI Food Equipment Group, Inc., 509 F.3d 776, 780 (6th Cir. 2007). A complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." Twombly, 127 S.Ct. at 1974. Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct. at 1964-65; see also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007).

In evaluating a motion to dismiss, a court generally is limited to the complaint and exhibits attached thereto. Amini v. Oberlin College, 259 F.3d 493, 502 (6th Cir. 2001).

II. Count Two - Gender Discrimination

Defendant first argues that the complaint fails to state a claim of gender discrimination. Ms. Samons alleges that she was discriminated against on the basis of her gender and subjected to a hostile work environment.

The elements of a prima facie case of disparate treatment based on gender under Title VII are that : (1) plaintiff was a member of a protected class; (2) plaintiff was subjected to an adverse employment action; (3) plaintiff was otherwise qualified for the position; and (4) similarly-situated non-protected employees were treated more favorably. Clayton v. Meijer, Inc., 281 F.3d 605, 610 (6th Cir. 2002).

The complaint contains only conclusory allegations of

5

discrimination. For example, while Mrs. Samons alleges in general terms that she was paid a lesser compensation than similarly situated males, see Complaint, ¶ 25, the facts in the complaint fail to identify even one male employee who was similarly situated to plaintiff who was paid more. She alleges in ¶ 14 that in December, 2006, her bonus was reduced in comparison to bonuses paid to male managers, but she does not allege even in general terms that these male managers occupied positions similar to hers. She alleges in ¶ 20 that Mike Nichols was not discharged for expressing his disagreement with Mr. Razavi. However, she simply alleges that she herself was discharged, and does not allege any reason for her discharge. In ¶ 17, she alleges that Mr. Razavi removed her from the final interviewing process and terminated her ability to make hiring decisions, but does not allege, even in general terms, that these actions were motivated by her gender. The allegations in the complaint as currently drafted are insufficient to raise Mrs. Samons' claim of gender discrimination above the speculative level.

The elements of a hostile work environment claim under Title VII requires proof that: (1) plaintiff was a member of a protected class (female); (2) plaintiff was subjected to harassment, either through words or actions, based on sex; (3) the harassment had the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer. Grace v. USCAR, 521 F.3d 655, 678 (6th Cir. 2008). "The harassment must meet both an objective and a subjective test, 'in other words, the conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person and the actual victim.'" Id. (quoting

6

Randolph v. Ohio Dep't of Youth Svcs., 453 F.3d 724, 733 (6th Cir. 2006)).

The complaint includes three instances, spread over a period of fifteen months, involving Mr. Wolf, an employee in human resources. Mr. Wolf was seen looking for pornography on his computer on two occasions, and who inappropriately discussed details of a sexual harassment investigation on another occasion. Complaint, ¶¶ 8, 11, 18. According to the complaint, Mr. Wolf was disciplined on these occasions. These instances, even if proved, are insufficient as a matter of law to support a hostile work environment claim.

Ms. Samons also alleges that she was harassed by two senior officials, Mr. Razavi and Mr. Willoby. However, there are no allegations that this harassment was sexual in nature or motivated by Ms. Samons' gender; in fact, the complaint states that the harassment was motivated by Ms. Samons' involvement in the exposure of an unethical affair involving a company executive. See Complaint, ¶ 7. Ms. Samons alleges that as part of this harassment, she was the target of criticism by Mr. Willoby about the Alabama project even though she was not involved in the project, and that Mr. Willoby refused to work with her. There are no facts alleged which would support an inference that these actions were due to Ms. Samons' gender.

Ms. Samons also alleges that in October, 2006, a female human resources employee began to ridicule Ms. Samons' efforts to obtain cooperation within the department. Complaint, ¶ 13. However, the source of the this alleged harassment was a female employee; no facts are alleged which would indicate that Ms. Samons' gender was the motivating factor behind the alleged criticism.

The complaint does not allege a broader pattern of harassment, even in general terms. The factual allegations in the complaint, even if proved and considered as a whole, would not show discriminatory intimidation, ridicule, or insult that was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993). The complaint fails to allege a claim of discrimination in the form of a hostile working environment.

Even assuming that Count Two of the complaint states a claim for gender discrimination, defendant also argues that this claim must be dismissed for failure to exhaust the administrative remedies mandated under Title VII. In enacting Title VII, Congress implemented "an elaborate administrative procedure, implemented through the Equal Employment Opportunity Commission ("EEOC"), that is designed to assist in the investigation of claims of racial discrimination in the workplace, and to work towards the resolution of these claims through conciliation rather than litigation." <u>Patterson v. McLean Credit Union</u>, 491 U.S. 164, 180-81 (1989). Prior to filing suit in federal court, a plaintiff must file timely charges of employment discrimination with the EEOC, and receive and act upon the EEOC's statutory notice of the right to sue. 42 U.S.C. §2000e-5(f)(1); <u>Puckett v. Tennessee Eastman Co.</u>, 889 F.2d 1481, 1486 (6th Cir. 1989). The failure to obtain a right-to-sue letter is not a jurisdictional defect, but rather a condition precedent to suit. <u>See</u> <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 392-98 (1982); <u>Rivers v. Barberton Bd. of Educ.</u>, 143 F.3d 1029, 1032 (6th Cir. 1998). However, the failure to exhaust administrative remedies may provide grounds for dismissal of a

Title VII claim. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990); Ang v. Procter & Gamble Co., 932 F.2d 540, 545-46 (6th Cir. 1991).

Plaintiffs state in their brief in opposition to the motion to dismiss that Ms. Samons filed a charge with the EEOC on October 29, 2007, and that a right-to-sue letter was issued over six months later. However, the EEOC charge and the right to sue letter have not been filed with the record in this case. Plaintiffs filed a motion for additional time to provide the right-to-sue letter, and the magistrate judge entered an order granting an extension to March 2, 2009, to file the right to sue letter with the court, see Doc. No. 13, but the right-to-sue letter has not been filed. The defendant and this court have no way of determining the nature of the charge which was filed with the EEOC, or whether the allegations in the complaint could have been "reasonably expected to grow out of the charge of discrimination." Ang, 932 F.2d at 545. Under these circumstances, it is appropriate to dismiss the claim in Count Two for failure to exhaust administrative remedies.

III. Count Three – FLSA Retaliation

Defendant argues that the complaint fails to state a claim of retaliation under the FLSA because the allegations are insufficient to indicate that Ms. Samons engaged in protected conduct. It is a violation of the FLSA

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding[.]

29 U.S.C. §215(a)(3). The FLSA anti-retaliation provision can be triggered by the unofficial or informal assertion of statutory

9

rights, such as by making an informal complaint. Moore v. Freeman, 355 F.3d 558, 562 (6th Cir. 2004). The Sixth Circuit has noted that "it is the assertion of statutory rights which is the triggering factor[.]" E.E.O.C. v. Romeo Community Schools, 976 F.2d 985, 989 (6th Cir. 1992)(citing Love v. RE/MAX of America, Inc., 738 F.2d 383, 387 (10th Cir. 1984)).

Defendant notes that Ms. Samons, as Senior Manager of Administration, was responsible for human resources matters. See Complaint, ¶ 5. Defendant argues that the complaint fails to allege that Ms. Samons actually asserted statutory rights on behalf of herself or others as opposed to merely bringing FLSA issues to the attention of the company as part of her job responsibilities.

Defendant relies on McKenzie v. Renberg's Inc., 94 F.3d 1478 (10th Cir. 1996), in which the court held that the plaintiff who, in her capacity as personnel manager, informed her employer that it was at risk of claims concerning alleged FLSA violations did not engage in activity protected under the FLSA's anti-retaliation provision. The court in McKenzie noted that "it is the assertion of statutory rights (*i.e.*, the *advocacy* of rights) by taking some action adverse to the company ... that is the hallmark of protected activity" under the FLSA. Id. at 1486 (emphasis in the original). The court further stated:

> Here, McKenzie never crossed the line from being an employee merely performing her job as personnel director to an employee lodging a personal complaint about the wage and hour practices of her employer and asserting a right adverse to the company. McKenzie did not initiate a FLSA claim against the company on her own behalf or on behalf of anyone else. Rather, in her capacity as personnel manager, she informed the company that it was at risk of claims that might be instituted by others as a result of its alleged FLSA violations. In order to engage in protected activity under § 215(a)(3), the

10

> employee must step outside his or her role of representing the company and either file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA. Here, McKenzie did none of these things. Indeed, McKenzie testified that her job responsibilities included participating in wage and hour issues. There is no evidence in the record to suggest that McKenzie was asserting any rights under the FLSA or that she took any action adverse to the company; rather, the record reflects that McKenzie's actions in connection with the overtime pay issue were completely consistent with her duties as personnel director for the company to evaluate wage and hour issues and to assist the company in complying with its obligations under the FLSA. McKenzie therefore lacks an essential ingredient of a retaliation claim; that is, she did not take a position adverse to her employer or assert any rights under the FLSA.

Id. at 1486-87 (emphasis in original, footnote omitted).

The reasoning in McKenzie was followed by the First Circuit in Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99 (1st Cir. 2004). In that case, the court concluded that the plaintiff informed the company of potential overtime violations under the FLSA in furtherance of his job responsibilities, which included approving invoices documenting the employees' hours worked and their corresponding pay. The court concluded that the plaintiff's letter advising of the violations indicated that he was concerned with protecting the company, not asserting rights adverse to the company. Id. at 102.

The approach taken in McKenzie was also followed by the Fifth Circuit in Hagan v. Echostar Satellite, L.L.C., 529 F.3d 617 (5th Cir. 2008), in which the court concluded that the plaintiff did not engage in protected conduct by asking the human resources manager to answer his subordinates' unspecified question regarding the

legality of a planned schedule change. The court noted that the McKenzie rule

> is eminently sensible for management employees like Hagan, because a part of any management position often is acting as an intermediary between the manager's subordinates and the manager's own superiors. The role necessarily involves being mindful of the needs and concerns of both sides and appropriately expressing them. Voicing each side's concerns is not only <u>not adverse</u> to the company's interests, it is exactly what the company <u>expects</u> of a manager.
>
> If we did not require an employee to "step outside the role" or otherwise make clear to the employer that the employee was taking a position adverse to the employer, nearly every activity in the normal course of a manger's job would potentially be protected activity under Section 215(a)(3). An otherwise typical at-will employment relationship could quickly degrade into a litigation minefield, with whole groups of employees–management employees, human resources employees, and legal employees, to name a few–being difficult to discharge without fear of a lawsuit. For those reasons, we agree that an employee must do something outside of his or her job role in order to signal to the employer that he or she is engaging [in] protected activity under Section 215(a)(3).

<u>Id</u>. at 628 (emphasis in original).

The approach in the above cases was also followed in <u>Robinson v. Wal-Mart Stores, Inc.</u>, 341 F.Supp.2d 759 (W.D.Mich. 2004). In that case, the court concluded that the plaintiff's expressions of concern, discomfort or frustration over her employer's wage and work hour reporting practices, even if characterized as "complaints," were made in her capacity as personnel training coordinator. <u>Id</u>. at 763.

In the instant case, the complaint states that Mrs. Samons was "Senior Manager of Administration, responsible for Human Resources, General Affairs, [and] Environmental health and Safety."

12

Complaint, ¶ 5. The complaint further states:

> As part of her early duties, Ms. Samons had been requested by the Japanese owners of the company to provide a report on the company's compliance with various laws. In February, 2006, Ms. Samons learned that the company was violating the Fair Labor Standards Act wage and hour provisions, and the Internal Revenue Service tax regulations. She notified the company's Executive Vice President, Fred Razavi, about the violations. He responded that the government couldn't tell him how to reward his associates.

Complaint, ¶ 9. These allegations indicate that Ms. Samons was notifying a company officer about alleged FLSA violations as part of her job duties as a human resources manager to alert the company to potential violations of the law. No facts are alleged which would suggest that Ms. Samons did anything more than simply bring these alleged violations to the attention of Mr. Razavi in accordance with her job responsibilities. There are no allegations that Ms. Samons ever complained about these alleged violations on behalf of herself or other women employees from a standpoint adversarial to the company.

The complaint also states, "In April and May, 2006, Ms. Samons reviewed the pay scale and promotions record of women in the company, and discovered that women were promoted at a much slower pace and paid lower salaries and wages [than] men." Complaint, ¶ 10. However, there are no allegations that Ms. Samons ever brought these findings to the attention of anyone in the company in any manner. There are no facts in the complaint indicating that Ms. Samons actually complained about lower wages on behalf of herself or other women in the company on any occasion.

Plaintiffs argue that the complaint is sufficient to state a claim of FLSA retaliation, relying on Romeo Community Schools.

However, the facts of that case are clearly distinguishable. In that case, the plaintiff was a temporary custodian who did not occupy a human resources-type position, and she complained to the school district that she believed the district was "breaking some sort of law" by paying her lower wages than previously paid to male temporary custodians. Romeo Community Schools, 976 F.2d at 989. This informal complaint was sufficient to constitute an assertion of statutory rights by the plaintiff. The complaint in this case contains no such allegations. No facts are alleged which would suggest that Ms. Samons ever stepped out of her role as the human resources manager.

The court concludes that since no facts are alleged in the complaint indicating that Ms. Samons engaged in protected conduct under the FLSA, Count Three fails to state a claim for relief.

IV. Count Four - Retaliation Under Title VII, ADEA and ADA

Defendant argues that Ms. Samons' claim of retaliation under Title VII, the ADEA and the ADA should be dismissed due to her failure to exhaust administrative remedies. Prior to bringing a claim of retaliation in violation of Title VII in federal court, Ms. Samons must exhaust her administrative remedies. Strouss v. Michigan Dep't of Corrections, 250 F.3d 336, 342 (6th Cir. 2001)(Title VII retaliation claims properly dismissed for failure to exhaust administrative remedies). Exhaustion of administrative remedies is required under the ADA. See 42 U.S.C. §12177(a)(procedures from 42 U.S.C. §2000e-5 apply to ADA claims); Parry v. Mohawk Motors of Mich., Inc., 236 F.3d 299, 309 (6th Cir. 2000)(employee may not file suit under the ADA if he or she does not possess a right-to-sue letter from the EEOC). Exhaustion is also required under the ADEA. See Oscar Mayer & Co. v. Evans, 441

U.S. 750, 753 (1979); Allen v. Highlands Hosp. Corp., 545 F.3d 387, 401 (6th Cir. 2008)(administrative exhaustion is a statutory prerequisite to maintaining claims brought under the ADEA).

As noted above, Ms. Samons' EEOC charge and right-to-sue letter have not been filed in this case. Although exhaustion is not a jurisdictional requirement, the court concludes that dismissal of the retaliation claims in Count Four for failure to exhaust administrative remedies is warranted for the reasons discussed above in regard to Count One.[1]

V. Conclusion

In accordance with the foregoing, defendant's partial motion to dismiss is granted, and Counts One, Three, Four and Six of the complaint are hereby dismissed. The dismissal of Counts One and Four of the complaint is without prejudice.


Date: April 6, 2009               s/James L. Graham
                                  James L. Graham
                                  United States District Judge

---

[1] Although defendant has not made the argument in connection with Count Four, the court notes that this claim arguably fails under the "step outside the role" rule as well. That rule has been applied to retaliation claims under Title VII. See, e.g., E.E.O.C. v. HBE Corp., 135 F.3d 543 (8thCir. 1998); Correa v. Mana Products, Inc., 550 F.Supp.2d 319 (E.D.N.Y. 2008); Vidal v. Ramallo Bros. Printing, Inc., 380 F.Supp.2d 60 (D.P.R. 2005).